IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS MECHLING AND CHRISTOPHER MECHLING,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>　　　　Defendants. | Case No. 20-cv-05223<br><br>**Judge Marvin E. Aspen**<br><br>**Magistrate Judge Jeffrey I. Cummings** |

**Declaration of Nicholas Mechling**

1

## DECLARATION OF NICHOLAS MECHLING

I, Nicholas Mechling, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. My brother Christopher Mechling and I own Twins Special LLC. We are also fully and exclusively licensed by Twins Special LLC to use, enforce and sublicense the intellectual property of Twins Special LLC including but not limited to the "Twins Special" and "King Professional" brands (such brands hereinafter collectively referred to as "Twins and King"). I am the CEO of Twins Special, LLC. Together and individually, Christopher and I shall hereinafter be referred to as "Plaintiff". Under agreement with Twins Special LLC, Plaintiff polices and enforces Twins Special's trademarks in the United States. Plaintiff and Twins Special, LLC are referred to herein together or individually as "Twins Special". I am knowledgeable about or have access to business records concerning all information referenced herein, including, but not limited to, Twins Special's trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and anti-counterfeiting activities. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Twins Special is a world-famous, well-known manufacturer of boxing gloves and mixed martial arts equipment. Twins Special manufactures boxing gloves and mixed martial arts equipment under multiple brands, including Twins Special and King Professional. Twins Special is famous for its Velcro wrist boxing gloves that are hand-crafted in Thailand. Twins Special's boxing gloves are designed to endure years of sparring, elite competition,

and training with heavy bags, pads and mitts. In addition to its world-famous boxing gloves, Twins Special is engaged in the manufacture, sale and distribution of shin guards, training gear, head gear, fight wear, and fighting accessories (collectively, the "Twins Products").

4. Twins Special's superior design and craftsmanship, along with the reputation of Twins Products, enabled it to achieve widespread recognition and fame and made Twins Special one of the most well-known manufacturers of fighting equipment. Today, Twins Special enjoys a very high, unaided awareness rate worldwide. Twins Special is also among the small group of boxing glove manufacturers whose boxing gloves have been approved by the world's largest sport governing bodies, such as the Nevada State Athletic Commission, the International Boxing Association ("AIBA") and International Federation of Muaythai Associations ("IFMA").

5. Twins Products are distributed and sold to customers through the Twins Special website, twinsfightgear.com, and through authorized retailers, including numerous authorized retailers in this district. Twins Special also authorizes multiple websites selling fighting equipment to sell Twins Products.

6. Twins Special incorporates a variety of distinctive marks in the design of its various Twins Products. As a result of its long-standing use, Twins Special owns common law trademark rights in its trademarks. Twins Special has also registered its trademarks with the United States Patent and Trademark Office. Twins Products typically include at least one of Twins Special's registered trademarks. Often several Twins Special marks are displayed on a single product. Twins Special uses its trademarks in connection with the marketing of its

Twins Products, including the following marks which are collectively referred to as the "TWINS Trademarks."

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 4,848,713 | TWINS SPECIAL | For: Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; chest protectors for sports; boxing rings; fighting cages for use with martial arts; martial arts gloves; athletic protective pads for chest, abdomen, belly, shins and head for use with martial arts; punching bags; bags specially adapted for sports equipment; athletic equipment, namely, hand wraps and mouth guards; skipping rope; athletic supporters; athletic equipment, namely, ankle guards, shin guards and head guards; abdominal protectors; martial arts kicking pads; martial arts punching pads; martial arts training equipment; training apparatus for boxing, martial arts, and similar sports; athletic sporting goods, namely, athletic wrist and joint supports; all the foregoing relating to boxing or martial arts and not relating to any other sports or sports team, league, mascot or stadium in class 28. |
| 4,848,712 | Twins Special | For: Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; chest protectors for sports; boxing rings; fighting cages for use with martial arts; martial arts gloves; athletic protective pads for chest, abdomen, belly, shins and head for use with martial arts; |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| | | punching bags; bags specially adapted for sports equipment; athletic equipment, namely, hand wraps and mouth guards; skipping rope; athletic supporters; athletic equipment, namely, ankle guards, shin guards and head guards; abdominal protectors; martial arts kicking pads; martial arts punching pads; martial arts training equipment; training apparatus for boxing, martial arts, and similar sports; athletic sporting goods, namely, athletic wrist and joint supports; all the foregoing relating to boxing or martial arts and not relating to any other sports or sports team, league, mascot or stadium in class 28. |
| 3,749,271 | KING BOXING EQUIPMENT PROFESSIONAL MADE IN THAILAND | For: Boxing shorts; Caps; T-shirts; Tank tops in class 25.<br><br>For: Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards in class 28. |
| 4,848,711 | TWINS SPECIAL | For: Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; chest protectors for sports; boxing rings; fighting cages for use with martial arts; martial arts gloves; athletic protective pads for chest, abdomen, belly, shins and head for use with martial arts; punching bags; bags specially adapted for sports equipment; athletic equipment, namely, hand wraps and mouth guards; skipping |

| Registration Number | Trademark | Goods and Services |
|---|---|---|
|  |  | rope; athletic supporters; athletic equipment, namely, ankle guards, shin guards and head guards; abdominal protectors; martial arts kicking pads; martial arts punching pads; martial arts training equipment; training apparatus for boxing, martial arts, and similar sports; athletic sporting goods, namely, athletic wrist and joint supports; all the foregoing relating to boxing or martial arts and not relating to any other sports or sports team, league, mascot or stadium in class 28. |

7. The TWINS Trademarks have been used exclusively and continuously in the U.S. by Twins Special and have never been abandoned. The above U.S. registrations for the TWINS Trademarks are valid, subsisting, in full force and effect, and one is incontestable pursuant to 15 U.S.C. § 1065. Attached hereto as **Exhibit 1** are true and correct copies of the U.S. Registration Certificates for the TWINS Trademarks included in the above table.

8. The TWINS Trademarks are exclusive to Twins Special and are displayed extensively on Twins Products and in Twins Special's marketing and promotional materials. Twins Products have long been among the most famous and popular of their kind in the world. Twins Special has expended substantial resources in advertising, promoting and marketing featuring the TWINS Trademarks. Additionally, the reputation of the Twins Products has been spread through word of mouth. Because of these and other factors, Twins Special and the TWINS Trademarks have become famous throughout the United States.

9. The TWINS Trademarks are distinctive when applied to the Twins Products, signifying to the purchaser that the products come from Twins Special and are manufactured to Twins

Special's quality standards. Whether Twins Special manufactures the products itself or licenses others to do so, Twins Special has ensured that products bearing its trademarks are manufactured to the highest quality standards. The TWINS Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the TWINS Trademarks is of incalculable and inestimable value to Twins Special.

10. For many years, Twins Special has operated a website where it promotes Twins Products at twinsfightgear.com. Twins Products are featured and described on the website and are available for purchase. The twinsfightgear.com website features proprietary content, images, and designs exclusive to Twins Special.

11. Twins Special, or third parties on Twins Special's behalf, have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the TWINS Trademarks. As a result, products bearing the TWINS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Twins Special. Twins Special is a multi-million-dollar brand, and Twins Products have become among the most popular of their kind in the world.

12. The success of the Twins Special brand has resulted in its significant counterfeiting. Consequently, Twins Special regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Twins Special has identified numerous fully interactive e-commerce stores, including those[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases"), which were offering for sale and/or selling unauthorized and unlicensed

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces.

products, including boxing gloves and mixed martial arts equipment, using infringing and counterfeit versions of the TWINS Trademarks (the "Counterfeit Twins Products") to consumers in this Judicial District and throughout the United States.

13. I perform, supervise, and/or direct investigations related to Internet-based infringement of the TWINS Trademarks. Our investigation shows that Defendants are using the Seller Aliases to sell Counterfeit Twins Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Counterfeit Twins Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Counterfeit Twins Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business with Twins Special and do not have the right or authority to use the TWINS Trademarks for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

14. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Twins Products to residents of Illinois.

15. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Twins Special has not licensed or authorized Defendants to use any of the TWINS Trademarks, and none of the Defendants are authorized retailers of genuine Twins Products.

16. Many Defendants also deceive unknowing consumers by using the TWINS Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Twins Products. Other e-commerce stores operating under the Seller Aliases omit using TWINS Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Twins Products.

17. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

18. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Twins Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

19. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Twins Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Twins Products were manufactured by and come from a common source and that Defendants are interrelated.

20. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

21. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Twins Special's

enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Twins Special.

22. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Twins Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the TWINS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Twins Products into the United States and Illinois over the Internet.

23. Monetary damages cannot adequately compensate Twins Special for ongoing infringement because monetary damages fail to address the loss of control of and damage to Twins Special's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Twins Special's reputation and goodwill by acts of infringement.

24. Twins Special's goodwill and reputation are irreparably damaged when the TWINS Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Twins Special. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Twins Special's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

25. Twins Special is further irreparably harmed by the unauthorized use of the TWINS Trademarks because counterfeiters take away Twins Special's ability to control the nature and quality of the Counterfeit Twins Products. Loss of quality control over goods offered for sale or sold under the TWINS Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

26. The use of the TWINS Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Twins Special is likely causing and will continue to cause consumer confusion, which weakens Twins Special's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Twins Products he or she has purchased originated from Twins Special will come to believe that Twins Special offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Twins Products, resulting in a loss or undermining of Twins Special's reputation and goodwill. Indeed, there is damage to Twins Special's reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who see inferior Counterfeit Twins Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Twins Special and the TWINS Trademarks. Such post-sale confusion results in damage to Twins Special's reputation and correlates to a loss of unquantifiable future sales.

27. Twins Special is further irreparably damaged due to a loss of exclusivity. Twins Products are meant to be exclusive. Twins Special's extensive marketing and innovative designs are aimed at growing and sustaining sales. The TWINS Trademarks are distinctive and signify to consumers that the products originate from Twins Special and are manufactured to Twins

Special's high quality standards. When counterfeiters use the TWINS Trademarks to offer for sale or sell goods without Twins Special's authorization, the exclusivity of Twins Special's products, as well as Twins Special's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

28. Twins Special will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 31ST day of August 2020 at San Diego, California.

_____
Nicholas Mechling